**Nos. 23-2134, 23-2216, 23-2958, 23-3035, 24-1352, 24-1884**

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

———————

UNITED STATES, *et al.,* ex rel., RONALD J. STRECK

*Plaintiff-Appellee/Cross-Appellant*,

v.

ELI LILLY AND COMPANY,

*Defendant-Appellant/Cross-Appellee*

———————

On Appeal from the United States District Court
for the Northern District of Illinois,
No. 1:14-cv-09412

———————

## DEFENDANT-APPELLANT/CROSS-APPELLEE'S
## PETITION FOR REHEARING EN BANC

———————

JOHN C. O'QUINN, P.C.
LUKE P. MCGUIRE
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

ERIN E. MURPHY
MATTHEW D. ROWEN
JULIA R. GRANT*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia Bar

*Counsel for Defendant-Appellant/Cross-Appellee Eli Lilly and Company*

October 27, 2025

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2134, 23-2216,</u> 23-2958, 23-3035, 24-1352, 24-1884

Short Caption: <u>United States, et al., ex rel. Streck v. Eli Lilly and Company</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** \*\*Modified to include all firms that appeared for the party previously.

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Eli Lilly and Company</u>

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Clement & Murphy, PLLC; Kirkland & Ellis LLP</u>

<u>Troutman Pepper Hamilton Sanders LLP; Faegre Drinker Biddle & Reath LLP</u>

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

<u>N/A</u>

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>N/A</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>Erin E. Murphy</u>     Date: <u>10/28/25</u>

Attorney's Printed Name: <u>Erin E. Murphy</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑     No ☐

Address: <u>706 Duke Street</u>

<u>Alexandria VA 22314</u>

Phone Number: <u>202-742-8900</u>     Fax Number: _____

E-Mail Address: <u>erin.murphy@clementmurphy.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2134, 23-2216,</u> 23-2958, 23-3035, 24-1352, 24-1884

Short Caption: <u>United States, et al., ex rel. Streck v. Eli Lilly and Company</u>

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

|☑| **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** **Modified to include all firms that appeared for the party previously.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Eli Lilly and Company</u>

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Clement & Murphy, PLLC; Kirkland & Ellis LLP</u>

<u>Troutman Pepper Hamilton Sanders LLP; Faegre Drinker Biddle & Reath LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

  i)      Identify all its parent corporations, if any; and

<u>N/A</u>

  ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>s/Matthew D. Rowen</u>          Date: <u>10/28/25</u>

Attorney's Printed Name:  <u>Matthew D. Rowen</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  <u>706 Duke Street</u>

<u>Alexandria VA 22314</u>

Phone Number: <u>202-742-8900</u>          Fax Number: _____

E-Mail Address: <u>matthew.rowen@clementmurphy.com</u>

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2134, 23-2216,</u> 23-2958, 23-3035, 24-1352, 24-1884

Short Caption: <u>United States, et al., ex rel. Streck v. Eli Lilly and Company</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [✓]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** \*\*Modified to include all firms that appeared for the party previously.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Eli Lilly and Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Clement & Murphy, PLLC; Kirkland & Ellis LLP

    Troutman Pepper Hamilton Sanders LLP; Faegre Drinker Biddle & Reath LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Julia R. Grant    Date: 10/28/25

Attorney's Printed Name:  Julia R. Grant

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [ ] No [✓]

Address: 706 Duke Street

    Alexandria VA 22314

Phone Number: 202-742-8900    Fax Number: _____

E-Mail Address: julia.grant@clementmurphy.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2134, 23-2216,</u> 23-2958, 23-3035, 24-1352, 24-1884

Short Caption: <u>United States, et al., ex rel. Streck v. Eli Lilly and Company</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** *Revised to add Clement & Murphy, PLLC as counsel, and to reflect that Ms. Murphy has replaced Mr. O'Quinn as Counsel of Record per Cir. R. 3(d).

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Eli Lilly and Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Clement & Murphy, PLLC; Kirkland & Ellis LLP

    Troutman Pepper Hamilton Sanders LLP; Faegre Drinker Biddle & Reath LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/John C. O'Quinn</u>    Date: <u>10/28/25</u>

Attorney's Printed Name: <u>John C. O'Quinn</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: <u>Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W. Washington, D.C. 20004</u>

Phone Number: <u>202-389-5191</u>    Fax Number: <u>202-654-9580</u>

E-Mail Address: <u>john.oquinn@kirkland.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2134, 23-2216,</u> 23-2958, 23-3035, 24-1352, 24-1884

Short Caption: <u>United States, et al., ex rel. Streck v. Eli Lilly and Company</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.***Revised to add Clement & Murphy, PLLC as additional counsel.*

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Eli Lilly and Company</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Clement & Murphy, PLLC; Kirkland & Ellis LLP</u>

<u>Troutman Pepper Hamilton Sanders LLP; Faegre Drinker Biddle & Reath LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
    <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
    <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/Luke P. McQuire</u>    Date: <u>10/28/25</u>

Attorney's Printed Name:  <u>Luke P. McQuire</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W. Washington, D.C. 20004</u>

Phone Number: <u>202-389-5000</u>    Fax Number: <u>202-389-5200</u>

E-Mail Address: <u>luke.mcguire@kirkland.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ............................................... i

TABLE OF AUTHORITIES.................................................................................. iii

RULE 40(b) STATEMENT ................................................................................. 1

INTRODUCTION ............................................................................................... 2

BACKGROUND ................................................................................................. 4

REASONS FOR GRANTING THE PETITION ..................................................... 7

I.      The FCA's *Qui Tam* Provisions Are Unconstitutional Twice Over ................ 7

II.     The Panel's Decision Creates A Circuit Split ............................................. 13

III.    The Issues Presented Are Exceptionally Important...................................... 16

CONCLUSION ................................................................................................. 18

CERTIFICATE   OF   COMPLIANCE   WITH   TYPE-VOLUME
        LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Bowsher v. Synar*,
    478 U.S. 714 (1986)....................................................................12

*Buckley v. Valeo*,
    424 U.S. 1 (1976)........................................................................11

*Consumers' Rsch. v. FCC*,
    88 F.4th 917 (11th Cir. 2023).......................................................7

*Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 474 (2010)....................................................................12

*Heckler v. Chaney*,
    470 U.S. 821 (1985)......................................................................8

*In re Aiken Cnty.*,
    725 F.3d 255 (D.C. Cir. 2012) ......................................................8

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)....................................................................15

*Lucia v. SEC*,
    585 U.S. 237 (2018)....................................................................11

*Morrison v. Olson*,
    487 U.S. 654 (1988)....................................................................12

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749 (5th Cir. 2001)....................................................9, 11

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)...................................................................7, 8

*The Confiscation Cases*,
    74 U.S. (7 Wall.) 454 (1868).........................................................8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...............................................................8, 12

*United States ex rel. Eisenstein v. City of New York*,
   556 U.S. 928 (2009)........................................................................10

*United States ex rel. Hall v. Tribal Dev. Corp.*,
   49 F.3d 1208 (7th Cir. 1995)..........................................................7

*United States ex rel. Kelly v. Boeing Co.*,
   9 F.3d 743 (9th Cir. 1993)..............................................................7

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023)................................................................. 12, 16

*United States ex rel. Sheldon v. Allergan Sales, LLC*,
   24 F.4th 340 (4th Cir. 2022)................................................... 16, 17

*United States ex rel. Streck v. Allergan, Inc.*,
   894 F.Supp.2d 584 (E.D. Pa. 2012) ......................................... 5, 14

*United States ex rel. Yannacopoulos v. Gen. Dynamics*,
   652 F.3d 818 (7th Cir. 2011)........................................................15

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
   751 F. Supp. 3d 1293 (M.D. Fla. 2024)......................................9, 11

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
   Nos. 24-13581 & 24-13583 (11th Cir. Oct. 30, 2024)......................16

*United States v. Allergan, Inc.*,
   746 F.App'x 101 (3d Cir. 2018)................................................ 1, 14

*United States v. Armstrong*,
   517 U.S. 456 (1996).......................................................................8

*United States v. Salus Rehab.*,
   2017 WL 1495862 (M.D. Fla. Apr. 26, 2017) ................................10

*United States v. Sun-Diamond Growers of Cal.*,
   526 U.S. 398 (1999).......................................................................15

*United States v. Texas*,
   599 U.S. 670 (2023).......................................................................8

*Unites States ex rel. Penelow v. Janssen Prods., L.P.*,
No. 25-1818 (3d Cir. Apr. 29, 2025)....................................................16

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)........................................................................15

## Constitutional Provisions

U.S. Const. art. II, §1, cl.1 ..............................................................7

U.S. Const. art. II, §2, cl.2 ............................................................11

U.S. Const. art. II, §3 .......................................................................7

## Statutes

31 U.S.C. §3730(b)(1)........................................................................9

31 U.S.C. §3730(b)(2)........................................................................9

31 U.S.C. §3730(c)(1)......................................................................11

31 U.S.C. §3730(c)(2)......................................................................10

31 U.S.C. §3730(c)(3)......................................................................10

31 U.S.C. §3730(d) ...........................................................................6

42 U.S.C. §1396r-8(a)(1) ..................................................................5

42 U.S.C. §1396r-8(b)(1) ..................................................................5

42 U.S.C. §1396r-8(k)(8) ..................................................................5

## Rules

Fed. R. App. P. 40(b)(2) ..................................................................15

Medicaid Program; Prescription Drugs,
72 Fed. Reg. 39,142 (July 17, 2007)........................................ 4, 5, 15

**Other Authorities**

Brandon J. Moss et al., *Supreme Court Clarifies DOJ's FCA Dismissal Authority*, Wiley (June 20, 2023), https://perma.cc/UTW2-VXH9....................10

*Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. O.L.C. 207 (1989)....................................................................9, 10, 11, 12

## RULE 40(b) STATEMENT

This case presents an issue of exceptional importance that only the en banc Court can resolve: whether the False Claims Act's *qui tam* provisions are unconstitutional. The panel decision also openly conflicts with *United States v. Allergan, Inc.*, 746 F.App'x 101 (3d Cir. 2018), which—in a case brought by the same relator, pressing the same legal theory, based on indistinguishable conduct— concluded that the same legal interpretation that the panel here deemed objectively unreasonable was a reasonable reading of the statute.

## INTRODUCTION

The panel decision here offends two bedrock principles of our constitutional order:  the Executive—and the Executive alone—enforces federal law on behalf of the United States; and private parties must have fair notice of laws before they can be punished for breaking them.  Each of those issues merits en banc review.

To calculate rebates owed to state Medicaid programs, pharmaceutical manufacturers must determine the "average price" of a drug.  While manufacturers have long sought guidance from the federal government on how to do so, the most the agency would tell them is to make "reasonable assumptions."  Lacking any more clarity than that, Eli Lilly and Company and several other manufacturers concluded that certain adjustments to fees owed to wholesalers (and vice versa) were not part of the "average price" received by the manufacturer.  But a serial relator named Ronald Streck has long disagreed with that interpretation and long tried to convince courts to hold that manufacturers defrauded the government by following it.

In his first effort—which originally included Lilly as a defendant—a federal district court rejected Streck's claims across the board, and the Third Circuit unanimously affirmed, concluding that the manufacturers' interpretation of the statute was reasonable and, therefore, could not create FCA liability.  Here, however, the panel adopted Streck's position wholesale, concluding that his view of a provision housed in a labyrinthine regulatory framework is so clearly correct as to

make the position sanctioned by four federal judges—including three judges on the Third Circuit—objectively unreasonable, and holding that Lilly must pay $200 million in damages and penalties for purportedly "defrauding" the United States by embracing it.

That result would be troubling enough if the judgment had been procured by the Executive, given the agency's refusal to provide pharmaceutical manufacturers with the guidance they repeatedly sought on a regulatory regime that is hardly a model of clarity and the Third Circuit's contrary conclusion about the same law and essentially the same facts. But it is especially untenable coming at the hands of a private bounty hunter who is not appointed by, removable by, or accountable to the Executive in any way, and who is—by Congress's design—motivated far more by personal profit than by any desire for regulatory clarity. The panel's decision creates not only a circuit split, but a powerful incentive for the government to shirk pleas for elucidation of ambiguous regulations, in hopes of reaping hundreds of millions (if not billions) of dollars from bounty-hunter actions pressing theories that the government is unwilling to use its own resources to advance. That trap-for-the-unwary formula cannot be reconciled with the Constitution's structural protections of liberty or bedrock principles of due process. The full Court should grant review.

3

## BACKGROUND

When pharmaceutical manufacturers lack clear regulatory guidance on certain Medicaid-related statutes, they are instructed to make "reasonable assumptions." *See* Medicaid Program; Prescription Drugs, 72 Fed. Reg. 39,142, 39,191 (July 17, 2007). That instruction litters the Federal Register, vesting regulated entities with the responsibility to determine whether their interpretations of provisions housed in a byzantine legal regime are "consistent with [the] … statute, regulation, and general business practice." *Id.* at 39,191; *see also, e.g.*, *id.* at 39,166-211. And there is no option to phone a friend. Attempts at clarification are categorically rebuffed; the Centers for Medicare & Medicaid Services consistently refuses to weigh in on manufacturers' internal assumptions, *see* A458.

Despite that federal standoffishness, penalties for getting it wrong are enormous: Given the number of claims for reimbursement that are submitted to Medicare or Medicaid in connection with a prescription drug, damages and penalties in FCA cases against pharmaceutical manufacturers can often reach hundreds of millions or even billions of dollars. The upshot is that manufacturers are dropped in a regulatory minefield with only an impenetrable map as a guide.

Here, Lilly—along with several other manufacturers—reasonably assumed that, under Medicaid's Drug Rebate Program, in-kind payments to wholesalers "represent[ed] fair market value for a bona fide, itemized service" that wholesalers

4

performed for the manufacturer.  A394-96; *see* 42 U.S.C. §§1396r-8(a)(1), (b)(1)(A), (k)(8).  And since so-called "bona fide service fees" are not part of AMP, *see* 72 Fed. Reg. at 39,148, Lilly reasonably concluded that these in-kind payments, which triggered a clawback (or "price-appreciation credit") from the wholesalers, could be excluded when determining the Average Manufacturer Price ("AMP").  A509:1-14. In other words, Lilly reasonably viewed the price-appreciation value as a part of wholesaler compensation—and thus as bona fide service fees (excluded from AMP), rather than as a separate revenue stream (included in AMP).

Lilly was transparent with CMS about this.  A394-96; A400.  And CMS never suggested that Lilly's view was wrong.  But a man named Ronald Streck has spent the past 17 years trying to monetize an idiosyncratic interpretation of the relevant regulations that was contrary to prevailing industry practice.  Streck is not a government official.  He is a bounty hunter.  Acting as a *qui tam* relator, he first sued Lilly and more than 30 other manufacturers in 2008, though he later dismissed Lilly from that action.  *United States ex rel. Streck v. Allergan, Inc*., 894 F.Supp.2d 584 (E.D. Pa. 2012) ("*Streck I*").  The district court there dismissed Streck's claims, concluding that the manufacturers' interpretation of the law was reasonable and thus could not form the basis of financially ruinous FCA liability.  894 F.Supp.2d at 600. And the Third Circuit unanimously affirmed.  746 F.App'x at 103.

Undeterred, Streck filed this suit in 2014, alleging that Lilly violated the FCA for the same reasons *Streck I* rejected.  R.1.  The district court dramatically parted ways with *Streck I*, concluding as a matter of law that the same interpretation that the Third Circuit blessed as "reasonable" is categorically *un*reasonable, and thus could be the basis of FCA liability.  SA.V1.37-40.  The jury then sided with Streck on the relevant remaining issues, after he urged the jurors to ignore whether Lilly "made a good faith decision at the time" or whether Lilly's calculations "ma[d]e sense."  A574:21-22, A575:7-8.  Blindsided, Lilly was confronted with a nearly $200 million bill.  Streck, meanwhile, stands to profit to the tune of $55 million.  *See* 31 U.S.C. §3730(d).

Lilly appealed, and a panel of this Court affirmed.  The panel endorsed Streck's idiosyncratic view of federal law, concluding that the only reasonable interpretation of a gargantuan legal regime is to exclude in-kind payments from bona fide service fees.  Op.16-28.  In doing so, the panel rebuffed the contrary reasoning of *Streck I*, determining that the four federal judges who decided the issue there were so fundamentally unreasonable that anyone who followed their view of the law can be tagged a fraudster.

## REASONS FOR GRANTING THE PETITION

### I.    The FCA's *Qui Tam* Provisions Are Unconstitutional Twice Over.

The FCA's *qui tam* provisions are inimical to the Constitution.  The FCA empowers private citizens to seek personal financial gain purportedly in the name of the United States, allowing their self-interested theories of federal law to bind the government in future suits, all the while insulating the private bounty hunter from any meaningful executive control.  Our constitutional structure simply does not permit Congress to accomplish that kind of usurpation of executive power.[1]

"Under our Constitution, the 'executive power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'"  *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, §1, cl.1; *id.* §3).  That means that the executive power cannot be disseminated among or executed by the other branches.  It also means that farming out law-execution to private citizens, thus "dispers[ing] some quantum of executive authority amongst the general public," transgresses constitutional limits.  *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 750 (9th Cir. 1993); *see also Consumers' Rsch. v. FCC*, 88 F.4th 917, 933-38 (11th Cir. 2023) (Newsom, J., concurring).  Yet the FCA does just that.

---

[1] Lilly identified this issue at the panel stage, Opening Brief 66 n.11, but only the en banc Court can overturn circuit precedent holding that "*qui tam* relators are ... appropriate parties" notwithstanding Article II of the Constitution.  *E.g.*, *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1215 (7th Cir. 1995).

It should go without saying that only the Executive can initiate a federal lawsuit in federal court in the name of the federal government.  After all, "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court" is a "quintessentially executive power."  *Seila Law*, 591 U.S. at 219; *see also The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458-59 (1868) ("[S]o far as the interests of the United States are concerned, [all suits] are subject to the direction, and within the control of, the Attorney-General.").  And the authority to initiate actions on behalf of the government carries with it the no less (and perhaps more) important authority to decline to pursue enforcement.  *See United States v. Texas*, 599 U.S. 670, 678 (2023); *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  Indeed, "[o]ne of the greatest *unilateral* powers a President possesses … is the power to protect individual liberty by essentially under-enforcing federal statutes regulating private behavior."  *In re Aiken Cnty.*, 725 F.3d 255, 264 (D.C. Cir. 2012) (Kavanaugh, J.).

The FCA's *qui tam* provisions flip these bedrock principles on their head.  They put the "choice of how to prioritize and how aggressively to pursue legal actions" within the "purview of private plaintiffs" who are "not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021).  And this fundamentally executive authority is bestowed

upon relators without any meaningful supervision or direction from the Executive, transforming private bounty hunters into ersatz executive officers and allowing them to pursue a pretty penny in the process.

A relator need not obtain the government's permission to file an FCA suit, even though he prosecutes "for" and "in the name of the government," 31 U.S.C. §3730(b)(1), and even though "prosecutorial discretion [may] counsel against [the government's] bringing a False Claims Act suit," *Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. O.L.C. 207, 217 (1989). A relator also enjoys wide discretion to select defendants, legal theories, and claims. At once, the Executive is placed on the relator's clock, as it has 60 days to evaluate national priorities and resource allocation issues to decide whether to intervene. *See* 31 U.S.C. §3730(b)(2). In the "vast majority of actions," the government's limited resources lead it to stay out of the fray—leaving the relator to pursue cases with enormous impact on the public fisc and federal law without any direction or oversight. *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F.Supp.3d 1293, 1301-02 (M.D. Fla. 2024). And, of course, a relator "has no obligation whatsoever to pursue the best interests of the United States"; he is instead free—and incentivized—to "negotiate a settlement in his own interest." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 762 (5th Cir. 2001) (en banc) (Smith, J., dissenting).

Meanwhile, the Executive is effectively sidelined:  He can request copies of pleadings and deposition transcripts, 31 U.S.C. §3730(c)(3); move to temporarily stay discovery, *id.* §3730(c)(4); or (sometimes) file a statement of interest, *but see United States v. Salus Rehab.*, 2017 WL 1495862 (M.D. Fla. Apr. 26, 2017) (denying government's motion "to submit a 'statement of interest'").  The government has no reserved power to guide the relator's self-interested litigation.  Its only option is to ask the court to dismiss the suit wholesale—a request the government cannot make unless and until it intervenes in a lawsuit it may not have the resources to pursue and participates in a hearing to justify dismissal.  *See* 31 U.S.C. §3730(c)(2)(A).  That likely explains why the government almost never moves to dismiss relator cases.  From 2018 to 2023, the government moved to dismiss less than 2% of the 3,000+ *qui tam* actions filed over that period.  Brandon J. Moss et al., *Supreme Court Clarifies DOJ's FCA Dismissal Authority*, Wiley (June 20, 2023), https://perma.cc/UTW2-VXH9.  Perhaps most troubling of all, if a relator's case proceeds to judgment, the government not only will be "bound by the judgment in all [future] FCA actions regardless of its participation in the case," *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 936 (2009), but will be precluded from taking contrary positions in future litigation, *see* 13 Op. O.L.C. 224.

One would expect someone entrusted with such substantial executive power to at least be appointed consistent with the Appointments Clause.  After all, anyone

who "exercise[s] significant authority pursuant to the laws of the United States" and occupies a "continuing position established by law," *Lucia v. SEC*, 585 U.S. 237, 245 (2018), must be appointed by "the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, §2, cl.2.  Relators plainly fit that bill. Pursuant to statute, they "conduct[] civil litigation in the courts of the United States for vindicating public rights," a function that "may be discharged only by persons who are 'Officers of the United States.'"  *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (per curiam).  And they prosecute with nearly unbounded discretion.  Indeed, even if the government intervenes, the relator still enjoys "the right to continue as a party to the action" he initiated and shaped.  31 U.S.C. §3730(c)(1).  "That is textbook 'significant authority.'"  *Zafirov*, 751 F.Supp.3d at 1309 (quoting *Buckley*, 424 U.S. at 138-39).  Yet a relator is not appointed by the President, the courts, or even an agency head; he appoints himself.  And the President cannot remove a relator "under any circumstances."  *Riley*, 252 F.3d at 763 & n.19 (Smith, J., dissenting).

This private usurpation of the law-execution function was no accident. Congress enacted the FCA with its *qui tam* provisions as a direct response to legislators' "distrust of, and dissatisfaction with, the way the executive branch was carrying out its law enforcement responsibilities."  13 Op. O.L.C. 230.  In passing the FCA, legislators envisioned relators as "a check that the Government does not

neglect evidence … or drop the false claims case without" (what *Congress* would deem) "legitimate reason." *Id.* at 218 n.6 (quoting S. Rep. No. 345 at 26).

That structure—unaccountable and uncontrollable private prosecutors pursuing their own ends in the name of the United States, in service of elevating legislative prerogative above executive prerogative—is fundamentally incompatible with our Constitution. *Cf. TransUnion*, 594 U.S. at 429. Congress does not have the power to siphon off executive power to others; Congress cannot give away what it never possessed.[2] *Bowsher v. Synar*, 478 U.S. 714, 726 (1986). For good reason: "The President cannot 'take care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 474, 484 (2010). Nor can the President "accomplish[] [his] constitutionally assigned functions" when a private person outside the Executive Branch is empowered to usurp them. *Cf. Morrison v. Olson*, 487 U.S. 654, 695-96 (1988) (emphasizing that the Attorney General at least had "several means of supervising or controlling the prosecutorial powers that may be wielded by an independent counsel," including the power to "define[]" the "jurisdiction of the independent counsel" and "remove her").

---

[2] For this reason, *qui tam* suits may also violate Article I. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 451-52 (2023) (Thomas, J., concurring).

In short, the FCA rips prosecutorial discretion from the heart of Article II and vests it in freewheeling bounty hunters. And it does so to diminish the power of the Executive. Nothing about that is constitutional.

## II. The Panel's Decision Creates A Circuit Split.

While the constitutional issues at the heart of this litigation suffice to merit en banc review, the panel's decision also opens up a circuit split that exacerbates the problems with deputizing unaccountable relators to enforce opaque federal law. The Third Circuit considered a case involving the same relator, pressing the same legal theories, about the same course of conduct—yet it reached the opposite conclusion. That conflict would be reason enough for reconsideration in any case, but it is particularly untenable here, where the question is whether Lilly arrived at a reasonable reading of a provision that the agency tasked with implementing it repeatedly refused to clarify. Both the district court judge and all three Third Circuit judges in *Streck I* concluded that Lilly's reading was reasonable—only to have three members of this Court conclude that the same reading not only is wrong, but is so obviously wrong that embracing it constitutes fraud on the United States. That underscores the acute fair-notice concerns that arise when Congress relieves the Executive Brach of oversight of or accountability for enforcing federal law.

In *Streck I*, four federal judges concluded that it was reasonable to understand an in-kind payment as a bona fide service fee, as Lilly (and many other

manufacturers) did.  The district court there stressed that it was "not unreasonable, let alone reckless, for [manufacturers] to have concluded that the 'price paid to the manufacturer' under AMP is just that, the price initially paid to the manufacturer by the wholesaler," especially given the "dearth of guidance on price appreciation credits." 894 F.Supp.2d at 600.  The Third Circuit unanimously affirmed, explaining that neither the statute nor the relevant regulations "unambiguously require [that] price-appreciation credits … be added to the price paid by wholesalers."  746 F.App'x at 107-08, 110.  And the court was "convinced that the available scattershot guidance failed to articulate a coherent position on AMP and, specifically, price-appreciation credits." *Id.* at 108.

Lilly took *Streck I* as reliable assurance that the approach the courts there found "reasonable" was in fact reasonable.  Yet the panel then pulled the rug out from under Lilly, holding that the same position was so patently *un*reasonable as to constitute fraud on the government.  That result is irreconcilable with *Streck I.*  The conduct at issue here is indistinguishable from the conduct there, as is Streck's legal theory.  Yet whereas the Third Circuit held that "the statute is … susceptible to multiple interpretations, one of which excludes the price-appreciation credits" (i.e., the interpretation Lilly adopted), and therefore rejected liability as a matter of law, *id.*, the panel here affirmed the imposition of more than $200 million in damages and penalties for embracing the very same theory that *Streck I* found reasonable.

The panel forthrightly "note[d]" its "divergence" from *Streck I*, Op.27, and it did not try to draw any distinction between the two cases—because there is none. The panel instead just dismissed *Streck I* as "unpublished, and non-precedential." Op.27. That does not make the split any less deserving of rehearing. *See* Fed. R. App. P. 40(b)(2)(C). It also misses the point. To be sure, "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). But when it comes to imposing what the Supreme Court has described as "essentially punitive" liability, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000), the question is not whose reading of the statute is correct; it is whether the defendant's reading is objectively wrong, *see United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011). And in answering that question, surely it is highly relevant that the only federal judges to weigh in (until this case) all concluded that the reading in question is reasonable—especially when, as here, the only guidance the agency has deigned to offer, despite repeated requests for guidance, is that manufacturers should make "reasonable assumptions." 72 Fed. Reg. at 39,191. Any other conclusion would transform the reasonable-assumptions regime into a "snare[] for the unwary," violating bedrock principles of fair notice and due process. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 411 (1999).

This is a case in point.  As Lilly strived to parse opaque regulatory guidance, its repeated explanations of its treatment of service fees drew no response or objection from the Executive.  And the Executive took no action even as Streck began pursuing his industry-wide crusade in 2008.  "What a troubling result: companies ask for explanation and at first are told to do their best but then are subjected to potentially ruinous liability for following those instructions."  *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 355-56 (4th Cir. 2022), *opinion vacated on other grounds*, 49 F.4th 873 (4th Cir. 2022) (mem.).  That is not the law in the Third Circuit.  It should not be the law of this Circuit, either.

## III.  The Issues Presented Are Exceptionally Important.

Multiple Supreme Court Justices have recognized "substantial arguments that the qui tam device is inconsistent with Article II" and proposed that the Court grant certiorari "in an appropriate case."  *Polansky*, 599 U.S. at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *see also id.* at 451-52 (Thomas, J., dissenting).  The Article II issue is currently pending in the Third and Eleventh Circuits.[3]  This Court should join them in addressing this undeniably important question.

And this is an especially good vehicle in which to do so, as it vividly illustrates the real-world problems with the FCA's *qui tam* regime.  The government declined

---

[3] *See United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, Nos. 24-13581 & 24-13583 (11th Cir. Oct. 30, 2024); *Unites States ex rel. Penelow v. Janssen Prods., L.P.*, No. 25-1818 (3d Cir. Apr. 29, 2025).

opportunities to clarify its ambiguous regulations or intervene in cases like this, and it stood idly by while Streck accepted Congress's invitation to usurp the Executive's enforcement role to punish Lilly—for conduct that the government itself was unwilling to say violated the law.  It is bad enough when the government engages in "Calvinball"—where "you make up the rules as you go," *Sheldon*, 24 F.4th at 355-56—but all the worse when the government never tells the industry it is wrong, and the surprise is sprung by an unaccountable relator purporting to stand in the government's shoes.  This Court should grant rehearing en banc and ensure that unappointed and unaccountable relators cannot capitalize on the government's strategic ambiguity and subject manufacturers to potentially ruinous liability for landing on the wrong side of an invisible line.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

s/Erin E. Murphy

JOHN C. O'QUINN, P.C.
LUKE P. MCGUIRE
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

ERIN E. MURPHY
MATTHEW D. ROWEN
JULIA R. GRANT*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

\* Supervised by principals of the firm who are members of the Virginia Bar

*Counsel for Defendant-Appellant/Cross-Appellee Eli Lilly and Company*

October 27, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, according to the "word count" function of Microsoft Word 2016, the Brief contains 3,851 words, excluding the parts of the brief exempted from the word count by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

October 27, 2025

s/Erin E. Murphy
Erin E. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Erin E. Murphy</u>
Erin E. Murphy